Court of Federal Claims, United States Court of Federal Claims, United States Court of Federal Claims. SATEC came running to the court of federal claims immediately after the Army announced an intention to take corrective action in a procurement that would, had it been followed reopening of bids on the solicitation requirements. Well, Mr. White, couldn't the, if we allowed this to go forward, couldn't the government always adopt this methodology? We'll just announce an intention and kind of proceed with intentions and thus avoid any bid protest challenges to our work. Well, Your Honor, the cases have demonstrated that there is a ripeness concept that is applicable here, and where the government agency has simply announced an intention to do something but not gone through with it, there is no ripe controversy. We don't know. When you say ripe, the cases, you're talking about TKS? Talking about TKS. But that was not a procurement context, was it? That's true, Your Honor, that was an international trade context, but many cases in the Court of Federal Claims below have applied that concept of ripeness, which is a jurisprudential doctrine that is broader than... It goes a little further than an intention, too. It says we've decided to take this action. And so they're pursuing a course which is going to cost systems tech their contract and put them into a rebid situation and cost them expense and time. Those are a lot of consequences that you're just kind of dismissing. Does the government concede that GAO wrongfully dismissed the protest? Well, we're not challenging at all the merits here, so the Court of Federal Claims determination when it did reach the merits is completely not challenged. Well, but apparently the GAO went ahead and acted and dismissed the protest based on a statement by the Army that the Army really didn't necessarily intend to carry out. That fact, Your Honor, doesn't change the fact that there was only an intended course of action, and the fact that that statement of intention could be said to have induced the GAO to dismiss the protest still doesn't change the fact that act on the part of the GAO does not change an announced intention of the Army into a final agency decision of the Army. But the purpose of them announcing their intention was to get the GAO to dismiss the protest, wasn't it? Well, you could say that, Your Honor. I mean, they clearly were responding to the letter of the GAO attorney with this statement and admittedly requesting that the GAO dismiss the protest based on its announced decision to take corrective action. But that wouldn't have prevented the Army from reversing course and deciding not to take the corrective action. As I understand your argument, you're saying that even if the Army had gone beyond the statement of intention and actually issued the solicitation, that we still wouldn't have jurisdiction? It still wouldn't be a ripe controversy and there still wouldn't have been standing on the part of SATEC and there wouldn't be jurisdiction in the Court of Filed Claims, all three. But again, this case is distinguished from TCS because the jurisdictional statute for the Court of Federal Claims in connection with this procurement process is very broad, is it not? It's broad, but it doesn't encompass every single move that an agency makes following through its procurement process. And that's really what's at stake here. This case is not a challenge on the part of SATEC to the solicitation. It's not a challenge to the award. In fact, this has to be analyzed as a pre-award protest because while they came to court, they were in fact the contractor that had been successful in the first go-round. So it wasn't a challenge to an award or proposed award. It wasn't a challenge... That's right, they were the contractor with the property interest that you were threatening with the new solicitation, correct? So as we've pointed out in the briefing, Your Honor, to whatever extent they are alleging that they're a contractor with contract rights, they're subject to the agreed upon contractual remedies which are provided in the contract, mainly the termination for convenience procedure. They can submit a termination for convenience settlement proposal if they're not happy with what the government does in response to that. They have a judicial remedy in the Court of Federal Claims that's an entirely separate matter from the bid protest. But the Court of Federal Claims has independent jurisdiction separate and apart from the contract dispute act, does it not? In this context, Your Honor, for a pre-award bid protest. So a challenge to aspects of the termination of the original contract. And again, this is all an intention. It never did happen and SATEC filed this case in court while it was the contractor. But had the contract in fact been terminated for convenience prior to the filing of this lawsuit, the Court of Federal Claims would not have possessed jurisdiction under section 1491B1 to address a contractor's challenges to the termination of its contract. That aspect of the case would have to be through the procedures of the Contract Disputes Act, having a claim and a final decision of a contracting officer, which is the mandatory exhaustion requirement of the CDA prior to challenging aspects of the contract. You're saying that there's never any vehicle to get any kind of injunctive relief? There would be, had there been a ripe controversy for which the court would have had jurisdiction. And a ripe controversy in a pre-award bid protest context would involve those challenges which either involved a exclusion of the protester from consideration, such as an agency determination of a competitive range which excludes a particular bidder, or it would have to involve a pre-award challenge to the solicitation itself. Either an allegation that it was hopelessly ambiguous in a patent manner, which was addressed by this court in the blue and gold fleet case, or a challenge... because blue and gold wouldn't let them go to the Court of Federal Claims if they hadn't challenged it during the bidding process, and you're saying they don't get to challenge it during the bidding process, so how do they ever get a chance to challenge this amended solicitation? Our argument, Your Honor, is that they never did try to challenge the amended solicitation. That's not what this protest is about. What the protest is about is a challenge to the very fact that the government, in an attempt to try to make sure that this was a fair process, had decided to start over and allow for a clarification of a solicitation which they don't have any problem with, and in fact defended it. Now their bid price is out in the open, and so they're prejudiced by that, and now they've got to go through the expense again. Don't they have some remedy for these harms? Again, these are not... these are for either the purposes of the ripeness analysis or for the purposes of a standing analysis. These are not harms. We've pointed in our brief to... It's not a fair process when now their competitor knows exactly what their numbers are. That's just the normal consequence of participating voluntarily in a government process for a government contract. When they were originally decided... when the government originally decided to award them the contract, the FAR specifically requires that the government... Once the decision's made. Once that decision is made, but the fact that they are now... because the government has decided to as part of the process, they have to just assume. And that's no different from a lot of the other standing and ripeness considerations that have been addressed by this court and the Supreme Court where, for example, a determination that a party is required to defend a government charge is going to cost money, is going to involve some sort of a burden for the party, but prior to the ultimate determination from which the legal obligations will flow, which in this case is the award of a contract, a party doesn't have a basis to claim that it has standing simply by having to participate in the process or that the claim is ripe because the TKS is in a really, really different context. The government's in a different posture. The Department of Commerce is in a different posture. They're a neutral arbiter. They're not result-oriented. It's a different animal. It is a different context, certainly, Your Honor. I agree with that. But the ultimate reasoning behind those intentions on the part of the Army and no aspect of this corrective action had ever been taken prior to the filing of the complaint. But in TKS, we see that even more so than... Does the Army still intend to go through with it if the injunction is lifted? Well, at this point, Your Honor, a lot has happened. I mean, obviously, the government has been enjoined by the contractor, been performing the contract. And were the government to succeed in this appeal, the Army's ultimate determination as to whether at the current stage of the contract, whether the Army would immediately follow through with some sort of corrective action as it had announced earlier or whether it would decide at this point to continue on with this if you don't take the corrective action? Well, part of the problem here is that the corrective action, which was challenged by SATEC prematurely, is still an action, which is not right to be challenged by any offeror. It's simply an intermediate part of this process. So as Judge O'Malley pointed out, we're not simply making an argument that's based on the fact that this was wholly announced intention, but in fact, this type of action, the government deciding either at the end of a GAO protest where there is a determination of the GAO and a recommendation that the government acts on or in a slightly different context like this one where the GAO process is aborted because the government announces a corrective action which then leads the GAO to dismiss the protest. In either instance, these type of corrective action challenges should not be filed in the Court of Federal Claims unless they either implicate the rule of blue and gold truly as a protest which must be filed in the Court of Federal Claims in order to preserve an argument that is a challenge to the solicitation or a challenge which is to the solicitation in a manner that isn't strictly related to the terms of it, but related to a determination to exclude an offer similar to this Court's decision in Turner where the GAO solicitation to new offers but excluding the particular offeror who the GAO had determined had an organizational conflict of interest. It's your jurisdictional argument that says that there has to be an award with respect to the solicitation, meaning the government doesn't have to go through the process of breaching the contract and opening itself up to an attack on that. It can just re-solicit and then you say there has to be an award. How does that square with the broad language of 1491B that says that the Court of Federal Claims can render judgment on action by an interested party objecting to a solicitation, forbid their proposals, order a proposed award or the award of a contract or any alleged violation of statute or regulation, and then it says it doesn't matter whether this occurs before or after the contract is awarded. Yes, Your Honor, and we're conceding, as I've just pointed out, that pre-award challenges to corrective action of this sort are appropriate in certain circumstances where there is a final agency action of some sort through which legal obligations are established. The contractor who is the protester on the pre-award is eliminated like Turner. That is one which we concede a pre-award protest on that corrective action is appropriate. Or the corrective action involves a change to the solicitation of some sort which is being challenged as creating, for example, a situation where now the solicitation is unduly restrictive and somebody wants to challenge that and that argument would be waived under the rule of blue and gold. Under that circumstance, pre-award corrective action challenge is okay. But in general, this type of action, and here SATEC is not challenging the solicitation as we've pointed out. There is no challenge to that, although that's what the Court of Federal Claims held incorrectly, nor, and looking at the Should we hear from Mr. Holman? Thank you, Your Honor. I'd like to reserve my time. Okay. Well, your time's expired, but we'll restore it and give Mr. Holman an extra three minutes if he needs to use it. Thank you, Your Honor. Certainly. May it please the Court. My name is Craig Holman, and I represent Systems, Applications, and Technologies, Inc., SATEC for short. I want to start by noting my stern disagreement with the argument that SATEC has not challenged the solicitation. That is a conclusion that can only be reached if SATEC's complaint filed in the Court of Federal Claims is not read. We repeatedly challenged the solicitation. We repeatedly challenged the need to, the asserted need to amend the solicitation. That is an incorrect statement that is directly contradicted by our complaint. Are you operating under the contract now? We are, Your Honor. Go ahead. Well, how does the government correct a mistake if it feels like it was unfair in the first solicitation, and it's proceeded to the point that it did in this action, and it wants to go back and make it right? Well, Your Honor, and we've cited this in our complaint. It is one of the statutory violations that we alleged before the Court of Federal Claims. 10 U.S.C. 2305F speaks to the process by which the government may take corrective action in a bid protest. It speaks to it specifically. The Army did not follow 10 U.S.C. 2305F. The judge, Judge Sweeney in the Court of Federal Claims, in response to our arguments in that regard, determined among other violations of law that the Army had violated 10 U.S.C. 2305F. As far as corrective action goes, and it's important to understand this, Your Honor, because the government's argument is very, very dangerous from a process perspective. There are over 1,000 protests filed at the Government Accountability Office every year. Many of them are resolved by corrective action. That corrective action moots the bid protest. As the Army argued to the Government Accountability Office, when they filed their determination that they are taking corrective action, as the Army stated in its own pleading to GAO, it moots the case. It is a final determination that the agency is going to act as it says, and it ends a legal proceeding. If this court were to... There seems to be an argument that is at least maybe not as expressed, but it appears to be running throughout the government's brief, that the fact that these communications were via e-mail somehow made them less final or less determinative. What's your response to that? That may be an argument they were making with respect to the attorney-advisor's communication before the GAO. But with respect to the actual corrective action determination, it was a pleading. It was filed electronically, but it was a pleading filed by the Army, a determination that they were going to take this corrective action, and they asserted that it mooted the case, that they were taking it. Not that they were going to think about it, because if they had told GAO we're thinking about taking corrective action, and this runs to the process point I'm talking about, they're trying to get this court to say that when the government files a determination that it's taking corrective action, that the next day on their whim, they can change that. They could change it five minutes after they file it. But if this court were to say that that final determination has no legal consequence, which is what they're asking for, that no legal rights or obligations or anything else flow from that corrective action, if you were to do that, there could be no corrective action in a protest, because when the government came in and filed its determination, the protester would say, that's a meaningless piece of paper. No, you can't, GAO, you can't dismiss this case as academic or moot. That's just a meaningless piece of paper. The government has just told the Federal Circuit that we're not bound by these corrective action determinations at all. And from there, Pandora's box will start. Every time the government comes in to ask for corrective action, the protester will say, it's a meaningless piece of paper. You can't, under Supreme Court case law, you cannot dismiss this case as moot. Well, not only the protester, won't the GAO say it? The GAO will say that. It will become impossible to take corrective action if the Army's position is accepted here. What about the protester in this? So now the protester had a GAO protest, that gets mooted by the Army's declaration that it was going to take corrective action, and then you go to the Court of Federal Claims, and the Court of Federal Claims says, no, you can't take this corrective action. Where does that leave the protester? The protester certainly had ability to protect itself. The protester, of course, could have filed a counterclaim in the Court of Federal Claims. It could have filed its own protest in the Court of Federal Claims. So the protester is not without protection in this process. What fundamentally is happening is the government is saying, they can come into a forum that is hearing a bid protest and tell the forum they're going to do something, but it not be true. That the very next minute after the protest case is mooted, they can turn around and decide, we don't want to do that. And making it doubly troubling for my client and similarly postured companies, we're caught, if this argument is accepted, in the posture where we now, according to the Army, cannot protest that corrective action decision until we've gone through a termination, a recompetition, an amendment of a solicitation, and a new award. And that new award has to come out to somebody else. Then, in the government's view, we can file a protest. Would your argument be stronger if you had waited until the solicitation was actually issued? I think, from my perspective, Your Honor, I think it would have been foolhardy for me to do so. To wait until my client is terminated, has to lay off employees, a competition is reopened, all of which the government said authoritatively in the determination that it was going to do. As this court said in Parcel 49, there is no need for a protester to wait until the illegal or improper action is consummated. There was a determination that the government was going to do this, and it would be dangerous precedent for this court to say we have to wait until the contract is terminated, the jobs are lost, the competition is reopened. And I want to swing back into 1491B, Judge O'Malley, because you spoke about it. It really is quite important here because every one of the government's arguments contradicts 28 U.S.C. 1491B-1. You can't come here before award. Well, 28 U.S.C. 1491B-1 says the court has jurisdiction regardless of whether it's before award or afterward. They say that you can't challenge anything but an award. As Judge O'Malley, you noted, 1491B says you can challenge proposed procurements. As this court said in Distributed Solutions, the statutory language seems pretty clear in your favor. Are there some regs that go the other way? No, Your Honor. I believe the court, the merits decisions are not challenged. As the court below noted, there were numerous regulations and statutes violated by the Army in connection with this process. And that is a conclusion, frankly, that was reached by the court and was not challenged by the Army. Tell me about the government's reliance on TKS because it's the only case they cite that comes close to that area. I think TKS, Judge Wallach, as you noted, is completely, and I don't want to put words in your mouth, I don't think you used it, but I'm going to use it in opposite. It is an anti-dumping case. We are here looking at 1491B1, a statutory prescription, the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996. This is not an anti-dumping case. It's a completely in opposite circumstance. But I would encourage the court that if you were going to really apply TKS in this circumstance, which would make no sense because it's not a bid protest case and not in 1491B1, but if you were going to look at TKS, look at it closely because in TKS, what is interesting on the ripeness count, they don't find that the whole case wasn't ripe. They find part of the case wasn't ripe. They find the part of the case that actually impacted somebody was ripe and capable of being heard. What they didn't find ripe was a part of the case in which the government had said they were giving advance notice of a future separate proceeding. That part, the court said, was not ripe. The part that impacted the parties immediately, like SATEC, was actually found to be ripe in TKS. So even if you were to apply TKS, it would support SATEC. But as I noted, that case has nothing to do with 28 U.S.C. 1491B1, which is what we're here about. But up to the extent that it lays out a pretty broad principle that we need to let government really act and make sure it's a final act before we interfere with those acts. Yes, Your Honor. But here, as a baseline matter, and I know I've already said this, but I do want to emphasize it. They put in a final determination to the GAO and asked the GAO to end the protest proceeding because it was moot. That action ended my client's ability to defend its contract award in the protester's protest. That is quintessential final action that has legal consequences. They directed the legal consequences. They caused legal consequences. It flowed right from it. Of course, that action is ripe to be reviewed. I point to another case from this court, Ram Corps, which is worth reading. Ram Corps distributed solutions. Aren't they all worth reading? I apologize, Your Honor. That was very inartfully worded. I apologize. I should have said in this context. But Ram Corps actually talks about a challenge under 1491B related to the Competition and Contracting Act override. So while a GAO proceeding was ongoing regarding an award competition, the agency issued an override decision. It overrode the Competition and Contracting Act stay of performance. The protester came over to the Court of Federal Claims in Ram Corps and challenged that override decision. Award decisions still under dispute over at GAO. Now the override decision is over here. This court said that absolutely there's jurisdiction in that environment. Final action in the context of a bid protest and under 1491B is a completely different animal than TKS. In fact, that's why Judge O'Malley, as you noted, the Tucker Act talks to violations of statute or regulation in connection with procurements, in proposed procurements. In distributed solutions, this court found it proper for a challenge to a request for information, a bid protest about a request for information, a precursor to a solicitation. We are now – the government is now at the complete other end of the extreme, ignoring the Tucker Act, ignoring distributed solutions in Ram Corps, in relevant precedent, in trying to get this court to say TKS says you can't file a bid protest until after a second award. I note in this regard that as we talk about this, Judge Sweeney's decision is quite thorough. In her footnotes, she cites 15 separate post-ADRA cases, corrective action protest challenges. One of note, Sentech, it contradicts the point that the Army made in its argument. Sentech is a civilly situated corrective action protest where this court found jurisdiction existed under – as a pre-award protest under the Tucker Act and the ADRA amendments. Sentech undercuts the very points that the government is making here today. In fact, in Sentech, they tried to say that don't consider Turner, which also undercuts them, don't consider Turner because Turner was excluded. Well, in Sentech, Sentech wasn't excluded. Pre-award protest, corrective action. The government's arguments are undermined in each and every instance by either the Tucker Act itself or in all instances by the Tucker Act itself, but also by this court's decisions. Turner is notable as well, again, because that's a corrective action protest. Turning to the issue of standing, the court has spoken to standing on a number of occasions. Most recently, in relevance to this, the court addressed a similar argument in Weeks Marine. This is important from my perspective as a lawyer in the procurement community because if this court were to find that there were no standing here until the award decision, certainly the very trap that this court warned about in Weeks Marine would be consummated. As this court said, in light of Blue and Gold Fleet, were we to hold that Weeks cannot challenge the Maytock solicitation in the Court of Federal Claims, we effectively would be saying that this court has set up a judicial scheme whereby a party runs afoul of the waiver rule if it waits to challenge a solicitation, but it is properly dismissed on standing grounds if it raises the challenge pre-award. Such a result would be anomalous. That is the very result the Army seeks to foist on SATEC here. If we wait, we run afoul of Blue and Gold. We indeed do repeatedly challenge the solicitation and the proposed amendment to the solicitation, as I noted in our complaint. If we wait, we run afoul of Blue and Gold. We must have standing now. We are here consistent with the Tucker Act. And for this reason, I ask that this court deny the government's appeal in this matter. Thank you, Mr. Pullman. Mr. White, you have your three minutes to rebuttal. I appreciate it, Your Honor. I want to first clarify one point, which I thought I made very plain during my argument, but which apparently was not understood by my opponent here. The government is not taking a position that is contrary to the statutory authority provided to the Court of Federal Claims for pre-award protest. As I thought I made very plain, we concede that a pre-award protest of the sort like Turner or even Weeks Marine, where there is either an exclusion action taken by the government as part of the corrective action, which immediately becomes right, or where there is a challenge to a solicitation as being illegal or there is a patent ambiguity of the sort that Blue and Gold covers, Weeks Marine is a case like that. But isn't that you asking us to read limitations, pre-award jurisdictional limitations into the statute where none exists? I mean, we did say in the RAMCOR that this jurisdictional reach is very broad and sweeping. And are there regs? Are you relying on some sort of articulated reg? No, we're relying on prudential law. We're relying on the ripeness and standing considerations, which are jurisdictional. We're relying on concepts like Abbott Labs and Standard Oil. And the fact that TKS itself happened to be a trade case... But how can this not be right if it mooted the GAO action? It's not right because the government's action through which the legal consequences flow is not the fact that the GAO, which isn't the Army, has decided to dismiss a protest based on the announcement. Okay, the government has announced a corrective action which causes another agency to take some action. But the final agency action and these concepts of final agency action and the like... You caused it to happen. The Army caused it to happen. The GAO's action, Your Honor, is not the Army's action which can be reviewed in a bid protest. So it's not a final agency action from which the ripeness... An action that is the first test of the ripeness doctrine is the action one which the agency decision is one that's fit for judicial review. And it gets to the concept of final agency action of the sort which TKS has addressed... ...that if there are rights determined and consequences will flow, that's final. Here we've got consequences all over the place, don't we? The consequences haven't even begun. In fact, as SATEC was in the running to be awarded this contract, again, had any of this happened, it could have again regained the contract. And in fact, under the same terms that it wanted for the first time. So in fact, no consequences have occurred other than the one that would have been a termination for convenience of its contract... ...which is in a matter entirely removed from the bid protest jurisdiction and is subject only to the CDA jurisdiction of the court. And they haven't run that. Another point, I see my time is running out here, Your Honor, but I definitely wanted to make the point because we definitely disagree. There is no challenge to the solicitation here. There isn't. I urge the court to look at the complaint and look for either a challenge to the terms of the solicitation... ...rather than a challenge to corrective action and the fact that the contract was being re-solicited, which they don't like. Or a challenge to a violation of statute or regulation in connection with the procurement. There is no reference whatsoever in the complaint. Thank you, Mr. White. Thank you. All rise. The Honorable Court of Judges is now on its stand.